No. 21,193.

THE STUDEBAKER CORPORATION, *Appellant*, v. W. J. BELL, *Appellee*, et al.

SYLLABUS BY THE COURT.

PROMISSORY NOTE—*Defense of Payment—Evidence—Finding—Agency.*
In an action on a promissory note executed by defendant as principal and two others as sureties, the answer pleaded payment to the sureties and that they were agents of the payee and authorized to receive payment. *Held*, that the finding upon which the judgment in favor of the defendant rests is contrary to the evidence and the undisputed facts.

Appeal from Lyon district court: WILLIAM C. HARRIS, judge. Opinion filed January 12, 1918. Reversed.

*W. S. Kretsinger*, of Emporia, for the appellant.

*W. L. Huggins*, and *O. T. Atherton*, both of Emporia, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The Studebaker Corporation appeals from a judgment against it for costs in an action on a promissory note executed by the appellee, W. J. Bell, as principal, and W. Kurt and Gary Wilson as sureties. The note was given as part payment for an automobile purchased by Bell from the appellant. Bell answered that he had paid the note to Kurt and Wilson, agents of appellant with authority to collect the note. The case was tried by the court and findings made, in substance, that the firm of Kurt and Wilson was appellant's agent and authorized to receive payment of the note.

The sole contention of appellant is that there was no evidence to support these findings, and that judgment should have been rendered against Bell for the amount of the note and interest.

The appellant is engaged in the manufacture and sale of automobiles, its principal place of business being at South Bend, Ind., and it maintains a branch office at Kansas City, Mo. At the time the note was executed Kurt and Wilson were partners in business at Emporia, and were selling the appel-

lant's automobiles under a written contract called a "dealer's agreement," which granted to them the right to sell Studebaker automobiles in certain prescribed territory during the life of the contract. The dealer was required to pay cash upon delivery of the automobiles at the regular list price, less certain trade discounts allowed. The title to the automobiles and parts furnished the dealer was to remain in the company until the goods were fully paid for. Kurt and Wilson agreed not to deal in new automobiles not sold by appellant in such manner as in the judgment of appellant would prejudice the sale or reputation of its automobiles. There was a provision in the contract to the effect that the dealer should in no way be the legal representative or agent of the company. The contract gave Kurt and Wilson authority to appoint a subdealer in any one of six designated towns, but they were made responsible to the appellant for all acts of any subdealer appointed by them. W. J. Bell lived at Americus and was engaged in the grocery business. Kurt and Wilson arranged through him to sell automobiles and to allow him part of the discount given by the appellant. Americus is not one of the places named in the contract at which Kurt and Wilson were authorized to appoint a subdealer, but the evidence shows that appellant knew they were selling cars through Bell and recognized him as a subdealer.

The appellee, Bell, testified that Kurt and Wilson made an arrangement by which he sold automobiles for them to such customers as he could find in his locality. His testimony was, "If I sold a car I came down and got it of Kurt and Wilson and sold it to my customer, and when the customer paid me the money was mine"; that this was the extent of his connection with Kurt and Wilson. He further testified that the note sued on is the only one he ever signed; that he was unable to get this note from Kurt and Wilson when he paid them the money, but kept insisting upon their getting it for him; he finally wrote to the Studebaker company and asked them if they had it and learned from them that they had. It was the only car he ever bought without paying cash for it.

Kurt, who was a witness for the appellee, testified that the way in which the firm of Kurt and Wilson carried on business with the appellant was, that if they wanted a car they had to

buy it from the Studebaker people and then sell it to some customer; that Bell paid the amount of the note to him shortly before it was due; that his firm had never made any other collections for the appellant; that in one other instance where a note was taken in payment for a car the note was sent by the appellant to the local bank and the maker notified to pay it there; that the reason the note was taken payable to the Studebaker company was because the firm had to sign the note with Bell. He knew the note was made payable in Kansas City. He was asked what direction, if any, he had from the branch house at Kansas City with reference to this Bell transaction, and said that a traveling representative of the appellant, named Wollington, came to his office in Emporia and made out the notes which were to be executed in payment for Bell's car. Asked what Wollington said, he answered:

"The representative made out these notes, the Bell note, and we signed it, and he said, 'Bell is dealing under you folks. He is your subdealer. All his transactions is done through you,' for him being our subdealer, he would have to do his transactions through us. That is the way this collection was made. When Bell paid us he was doing his business through us instead of through the company. We made that collection.".

On cross-examination he testified:

"Q. Now, then, you say that Wollington told you to collect this money? A. Well, he told us that all of Bell's transactions was through us.
"Q. Is that what he said? A. That's what he said."

He was recalled by the appellee and asked the following question:

"I did understand you to say that the man that made out the note was the one that told you that you was to collect that from Bell and they looked to you for it. A. That's right."

He was again cross-examined, and the substance of his testimony is given in the following questions and answers:

"Q. Now, I understand now, Mr. Kurt, that during that conversation there was not anything said about you collecting this particular note from Bell? A. Well, now, I can't say just exactly on that but I think it included that.
"Q. That is simply your opinion that it did include that but do you remember anything said about you having to collect this note? A. No, I would not say that I remember of anything said definite about that note. I said at the time he made the notes out that he mentioned—or spoke to him [me] about the dealings with Bell, and he said all the transactions as between you and Bell; this Bell, we don't know each other."

The court overruled a demurrer to the appellee's evidence. The appellant's evidence in rebuttal was given in the form of depositions. The treasurer of the appellant testified that Kurt and Wilson had no authority to accept payment of the note. Coleman McNulty testified that on the 3d of February, 1915, he was salesman for the Studebaker company and his territory then included the city of Emporia; that he served there from January, 1915, until August 12 of that year; he was preceded in that territory or "block" by Iver Schmidt and followed by L. S. Wollington; that Wollington commenced in that district on the 12th of August, 1915. He denied having any conversation with Kurt or Wilson at Emporia concerning the collection of the note or payment of the same. He further testified that he had no authority to make oral or written agreements concerning the collection of money due the corporation for the sale of automobiles. J. W. Lytle, an employee of the appellant in the traffic department at the Kansas City branch, testified that the note sued on was drawn up by himself in the office of the company at Kansas City. Appellant's cashier testified that L. S. Wollington was put on the Emporia territory in July or August, 1915, and had not made that territory before; also, that the note sued on was drawn up in the office at Kansas City by J. W. Lytle, and was sent to the Emporia State Bank to be signed. He denied that Kurt and Wilson, or either of them, had any authority to collect from Bell the amount due on the note.

The court made the following finding of fact:

"The court further finds from the evidence that the said defendant, W. J. Bell, at or about the time of the maturity of said note paid the same by paying to the said Gary Wilson and William Kurt, who were at said time a partnership and as such partnership were the local agents of the said plaintiff, through whom the said W. J. Bell had theretofore transacted his business with said plaintiff."

Upon this finding the court based the further finding that Kurt and Wilson were the agents of appellant, and held as a matter of law that the payment to them satisfied the note.

In our opinion it is very doubtful if there is any evidence to sustain the finding that Kurt and Wilson were agents of appellant at all, or that they had any authority other than to deal in automobiles in the manner specified in the contract. How-

ever, aside from this part of the findings, there is nothing in the evidence to sustain the finding that when Bell made the payment to Kurt and Wilson they were the local agents of the appellant "through whom the said W. J. Bell had theretofore transacted his business with" the appellant. We are unable to find, in the record, evidence showing that prior to the payment Bell ever transacted any business with appellant, except to purchase the one car and to execute the notes in payment therefor. On the contrary, the undisputed evidence is, that he bought cars direct from Kurt and Wilson, paid for them in cash, sold them to customers of his own, and when they paid him for the cars, the money belonged to him. In these transactions he had no dealings with the appellant; nor does he claim to have had. His testimony as to this car is, that he went to Kansas City and purchased it from the branch house. Kurt was with him, and presumably the firm of Kurt and Wilson got the benefit of a dealer's commission. The utmost that can be said for the testimony of Kurt with respect to the conversation with Wollington is, that he was inclined to think it referred to and included this note; but he states the substance of the conversation from which it is apparent that nothing was said about the note nor about collections, and that it referred only to transactions between Bell as subdealer and Kurt and Wilson. Again and again the witness declared that the note was not mentioned. Each time that he is asked to give the conversation, he states that the substance of what Wollington said was, that the Studebaker company had no dealings with Bell in the purchase of cars; that Bell was not the agent of the appellant, but a subdealer under Kurt and Wilson, and in all transactions between them Bell was to pay them. The purchase of the car and the giving of the note was not a transaction between Bell on the one side and Kurt and Wilson on the other. That was a transaction in which Bell, Kurt, and Wilson were the makers of a promissory note, and the Studebaker corporation was the payee. Moreover, the evidence shows that Kurt and Wilson never made collections for the appellant, and that in the only other instance where a note was taken in payment for an automobile, the appellant sent the note for collection to the local bank and it was paid there.

The provision in the contract that the dealer was in no way

the legal representative or agent' of the company, and had no right or authority from it to assume any obligation on its behalf or to bind it in any manner, expressed the intention of the parties and cannot be wholly ignored. *Prima facie* it stated the relation between the parties. No reason is perceived why the contract should not control, unless it was afterwards altered, or unless the appellant is in some way estopped by its conduct from relying upon the terms of the contract. Of course, the law is well settled that nothwithstanding the express terms of the contract, if appellant by its course of dealing with Kurt and Wilson held the latter out to the public or to Bell as its agent to collect the note, then the courts would ignore the provision and hold appellant estopped to deny the agency. Now what particular conduct of the appellant, or course of dealing by it with Kurt and Wilson, is shown, upon which an estoppel can be predicated? The trial court seems to have concluded that appellant was estopped to deny the authority of Kurt and Wilson to receive payment of the note, because through them Bell "had theretofore transacted his business with" appellant. As already shown, the undisputed evidence is, that Bell had no transactions or dealings with the appellant save and except the purchase of this one car for which he gave the note sued on; and further, that he cannot base any estoppel on the conversation between Wollington and Kurt for he was n't present, and is not shown to have had any notice or knowledge of the conversation prior to the time he made his payments. These facts, together with the undisputed testimony that Kurt and Wilson had never received payments on promissory notes belonging to the appellant, and had never made collections for it, leave no foundation for the operation of estoppel. There was nothing shown in the evidence to overcome the written contract defining the limits of the authority of Kurt and Wilson.

The note was payable at Kansas City to the order of the Studebaker corporation. Bell was the principal and Kurt and Wilson were sureties; the note was not in their possession, and Bell knew these facts. Where payment is relied on as a defense to an action on a promissory note, and it is sought to show the agency of a comaker to collect for the principal, especially where the note is not in the hands of the other maker, the evi-

dence to establish authority to receive payment should be clear and convincing, because such a proceeding is opposed to the usual course of business in transactions relating to promissory notes. Such agency ought not to·be assumed from the character of the testimony given by Kurt, to the effect that he thought the conversation related.to the note. Since the court based the conclusion of law, that agency was established, upon a finding that the appellee had transacted his other business with the appellant through the same parties, which is not sustained by any evidence, it follows that the judgment must be reversed with directions to render judgment against the appellee.